## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

In re:  **PROSPECT HOMES OF RICHMOND, INC.,**       Case No.  09-33528-KRH
                       **Debtor.**             Chapter 11
        **Employer Identification No. 54-1452058**

## DISCLOSURE STATEMENT
### June 2, 2010

Prospect Homes of Richmond, Inc. (the "Debtor"), as debtor in possession, has prepared and filed this disclosure statement ("Disclosure Statement") for the purpose of providing creditors herein with adequate information about the Debtor and its proposed plan of liquidation (the "Plan"), which has been filed with the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court"), so that creditors may make an informed judgment with respect to the Plan and its approval.  A copy of the Plan accompanies this Disclosure Statement.

As a creditor, your acceptance of the Plan is important.  In order for the Plan to be accepted, of those creditors voting, creditors holding at least two-thirds in amount and more than one-half in number of the allowed claims of each class of creditors impaired under the Plan must vote to accept the Plan.

**NO REPRESENTATIONS CONCERNING THE DEBTOR, THE PLAN, OR THE VALUE OF THE DEBTOR'S PROPERTY, ARE AUTHORIZED BY THE DEBTOR UNLESS SET FORTH IN THIS DISCLOSURE STATEMENT. ACCORDINGLY, NO REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE, OTHER THAN THOSE CONTAINED IN THIS DISCLOSURE STATEMENT, SHOULD BE RELIED UPON IN EXERCISING YOUR RIGHT TO ACCEPT OR REJECT THE PLAN.**

The information contained herein has not been subjected to a certified audit.  The Debtor therefore is unable to warrant or represent that this information is without inaccuracy, although great effort has been made to be accurate.

Capitalized words in this Disclosure Statement are defined in Article I of the accompanying Plan, and those definitions are used in this Disclosure Statement.

Roy M. Terry, Jr. VSB No. 17764
John C. Smith, VSB No. 44556
Elizabeth L. Gunn, VSB No. 71044
DurretteBradshaw PLC
1111 East Main Street, 16th Floor
Richmond, Virginia 23219
(804) 775-6900
Fax: (804) 775-6911
Counsel for Prospect Homes of Richmond, Inc.

# I.    INTRODUCTION

This is the disclosure statement (the "Disclosure Statement") in the Chapter 11 case of Prospect Homes of Richmond, Inc. (the "Debtor").  This Disclosure Statement contains information about the Debtor and describes the Chapter 11 Plan of Liquidation (the "Plan") filed by the Debtor.  A full copy of the Plan is attached to this Disclosure Statement as Exhibit A. ***Your rights may be affected.  You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney.  If you do not have an attorney, you may wish to consult one.***

The proposed distributions under the Plan are discussed in Section III of this Disclosure Statement.  General unsecured creditors are classified in Class 5, and are projected to receive no distributions.

### A.    Purpose of this Document

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case,

- How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.,* what you will receive on your claim or equity interest if the plan is confirmed),

- Who can vote on or object to the Plan,

- What factors the Bankruptcy Court will consider when deciding whether to confirm the Plan,

- Why the Debtor believe the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and

- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement.  This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

### B.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

The Bankruptcy Court has not yet confirmed the Plan described in this Disclosure Statement.  This section describes the procedures pursuant to which the Plan will or will not be confirmed.

#### 1.    Time and Place of the Hearing to Confirm the Plan

The hearing at which the Bankruptcy Court will determine whether to confirm the Plan will take place on July __, 2010, at __:00 a.m., before the Honorable Kevin R. Huennekens, United States Bankruptcy Judge, at 701 East Broad Street, Room 5000, Richmond, Virginia 23219.

2.     Deadline for Voting to Accept or Reject the Plan

If you are entitled to vote to accept or reject the Plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to DurretteBradshaw P.C., Attn: John Smith, 1111 East Main Street, 16th Floor, Richmond, Virginia 23219.

**Your ballot must be actually received by July __, 2010, at 5:00 p.m. Eastern Daylight Time or it may not be counted.**

3.     Deadline for Objecting to the Confirmation of the Plan

Pursuant to Local Bankruptcy Rule 3016-1(E), objections to confirmation of the Plan must be filed with the Bankruptcy Court and served on the United States Trustee, Debtor, and any other party designated by the Bankruptcy Courts, not later than seven (7) business days prior to the date set for the initial hearing on confirmation.

4.     Identity of Person to Contact for More Information

If you want more information about the Plan, you should contact DurretteBradshaw P.C., Attn: John Smith, 1111 East Main Street, 16th Floor, Richmond, Virginia 23219.

C.     **Disclaimer**

*The Court has approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.*

## II.     BACKGROUND

A.     Description and History of the Debtor's Business

The Debtor is a Virginia subchapter S corporation founded in 1988 by Joseph R. Audi. The Debtor operated as a residential homebuilder throughout Central Virginia out of a central office located in Henrico County, Virginia. Over time, the Debtor formed a number of subsidiary limited liability companies to acquire and develop land for sale to the Debtor and/or other homebuilders as residential lots.

B.     Insiders of the Debtor and Management

From inception, the Debtor has been owned one hundred percent (100%) by Joseph R. Audi. Mr. Audi also serves as President and CEO. At the time of filing, Anthony P. Renaldi served as CFO and Vice-President of the Debtor. Effective March 1, 2010, Mr. Renaldi resigned his position as CFO and continues to serve as Vice-President on a part-time, as needed basis. Mr. Renaldi received a salary up through February 28, 2010, and currently is paid on an hourly basis for services rendered for the Debtor. Prior to the Commencement Date, William Foster was hired by the Debtor to serve as a consultant during the chapter 11 case. Mr. Foster and Mr.

Audi are paid salaries for their services as management of Debtor. Mr. Audi and Mr. Renaldi are "insiders," as that term is defined in Bankruptcy Code § 101(31). Mr. Foster is not an "insider."

C.    Events Leading to Chapter 11 Filing

1.    Economic Downturn and its Impact on the Debtor's Sales

Prior to the filing of this chapter 11 case, the Debtor was involved in the building and selling of single family detached and town homes in eighteen (18) different communities throughout Central Virginia. The prices of the homes ranged from $150,000 to $500,000 or more. The Debtor was consistently a top five builder in terms of unit sales in the Richmond market for the period 1999-2009 and was long regarded as a high quality builder winning numerous awards for its design and build quality, including many Gold and Silver Awards in the annual Richmond Parade of Homes.

In addition to building and selling homes, the Debtor owned a number of limited liability company subsidiaries that acquired and developed raw land into residential lots ready for building. The Debtor also had a number of affiliate companies that complemented the Debtor's homebuilding and land development operations through land acquisition, development, and other real estate related services.

Corresponding with the nationwide housing "boom," the Debtor experienced many years of growing revenues and records profits up through 2007. Beginning in 2007, the homebuilding industry took a severe downturn, further impacted by the mortgage market freeze in 2008. Additional economic factors in the Central Virginia region – such as job losses and increased unemployment – served to both increase the resale home inventory and decrease the potential buyer pool for new homes.

In 2007, the Debtor sold approximately 190 homes for total revenues of almost $60,000,000. In 2008, sales dropped forty percent (40%) and the Debtor failed to make a profit. In 2009, the Debtor sold a total of forty (40) homes, the majority of which occurred after the filing of the chapter 11 case and were sold for less than the debt owed on the property. Despite reductions in staffing of almost seventy percent (70%) between 2008 and the Commencement Date and an approximate sixty percent (60%) reduction in overhead expenses in the twelve (12) months prior to filing, the Debtor was unable to continue to meet its obligations as they became due. At the time of filing, many secured lenders were in the process of beginning foreclosure proceedings on their collateral. Ultimately there were four distinct factors that led to the Debtor's filing: (i) the inability of the Debtor to obtain necessary lending to complete construction of projects; (ii) decreased liquidity; (iii) decreased demand for new homes; and (iv) judgments and liens impairing the Debtor's ability to market and sell completed properties.

2.    Farmville Investment Group Lawsuit

In 2006, the Debtor was sued in Henrico County Circuit Court by the Farmville Investment Group. The litigation continued through May 2009, and on May 15, 2009 a final judgment was entered against the Debtor in the principal amount of $1,805,095.40 plus interest at six percent (6%) from April 27, 2009. In defending against the lawsuit and pursuing its counterclaims, the Debtor incurred significant legal fees and costs. The effect of entry of the

judgment further strained the Debtor's financial viability and was another factor in the timing and filing of the Debtor's case.

D.    Significant Events during the Bankruptcy Case

On June 2, 2009 (the "Petition Date" or "Commencement Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On June 4, 2009, the Debtor filed its "first day" motions for relief, including a motion to authorize the Debtor to incur post-petition secured indebtedness with Joseph R. Audi (the sole shareholder of the Debtor) and J.R. Audi LLC (an entity solely owned by Mr. Audi)(the "DIP Motion").  Prior to the Petition Date, the Debtor sought third-party financing to either (i) add liquidity to the Debtor in an attempt to avoid filing bankruptcy or (ii) serve as secured financing within a bankruptcy case. Because substantially all of the Debtor's assets were already pledged as collateral for existing loans, the Debtor was unable to find a third-party willing to lend it funds.  Therefore, the Debtor's only available funding was through the loans from Mr. Audi and J.R. Audi LLC (collectively, the "DIP Loans").  The DIP Motion sought authority to enter into a secured note with Mr. Audi in an amount up to $50,000.00 and J.R. Audi LLC in an amount up to $1,500,000.00, with such funds to be advanced when needed and requested by the Debtor (the "DIP Notes").  The DIP Motion also sought authority for the Debtor to grant to Mr. Audi and J.R. Audi LLC as security for the DIP Notes a first priority interest in (i) the proceeds of the $550,000.00 settlement with West Broad Village, LLC related to security deposit of the Debtor for lot purchases at West Broad Village (as more fully described herein) and (ii) all general intangibles of the Debtor, including but not limited to, intellectual property, company name, logo, rights to architectural plans, but specifically excluding any causes of action under chapter 5 of the Bankruptcy Code.  The Bankruptcy Court granted interim approval of the DIP Motion at a hearing held on June 5, 2009 and by order entered July 2, 2009 (the "Interim DIP Order"), and final approval of the DIP Motion by order entered August 7, 2009 (the "Final DIP Order"). Pursuant to the terms of the Final DIP Order, the Debtor was required to provide written notice to the Creditors' Committee of any disbursements made from the DIP Loans to the Debtor. Proceeds from the DIP Loans could be used to fund the Debtor's operating expenses, including administrative expenses and legal fees, but the Debtor was prohibited from using the proceeds as construction financing.

Both prior to and continuing after the Petition Date, the Debtor sought to negotiate with its secured lenders to either (i) continue construction on projects that were profitable or (ii) reach settlements regarding the lenders' debt and collateral.  Over the course of the bankruptcy case, the Debtor was able to reach and obtain Bankruptcy Court approval of settlements with five (5) secured bank lenders and one (1) other secured lender which resulted in the surrender of collateral by the Debtor to the secured lenders and the elimination of significant unsecured deficiency claims against the bankruptcy estate.  The secured lenders with whom the Debtor did not reach settlement were granted relief from the automatic stay by the Bankruptcy Court to foreclose upon their collateral.

On the Petition Date, there were a substantial number of_ mechanics' liens filed against the Debtor's properties.  As part of the settlement process with secured lenders, the Debtor and Mr. Audi agreed to clear the title of the applicable lender's property of any mechanics' liens thereon.  In order to facilitate and expedite this settlement process, the Debtor sought and

obtained Bankruptcy Court approval of procedures to settle mechanics' lien claims without further order of the court. Pursuant to the procedures, the Debtor could settle without any notice to any party, any mechanics' lien in the amount of $2,500.00 or less. For mechanics' liens greater than $2,500.00 but less than $15,000.00, the Debtor had to provide five (5) business days notice of the proposed settlement to the Creditors' Committee, U.S. Trustee, and any affected secured lender. For mechanics' liens in excess of $15,000.00, the Debtor had to file a motion for Bankruptcy Court approval of such settlement. In total, the Debtor settled a significant number of claims pursuant to these procedures over the course of the bankruptcy case.

Prior to the Petition Date, the Debtor was in the business of developing and selling homes. In an abundance of caution, and because many post-petition sales of homes were "short sales" (*i.e.*, for less than the amount of the secured claims thereon), the Debtor sought Bankruptcy Court approval and authority for the sales of real property to third-parties. Initially, the Debtor filed separate motions for sales of property, but ultimately sought and obtained Bankruptcy Court approval of notice and procedures for the sale of real property in the ordinary course of business without further order of the Bankruptcy Court. Pursuant to this process, the Debtor filed a notice of each proposed sale with the Bankruptcy Court and parties had five (5) business days to object to such sale. The sales allowed the Debtor to convey title of sold properties free and clear of all liens, claims, encumbrances, and interests in the properties.

In July 2009, the Debtor obtained approval of a settlement with West Broad Village, LLC ("WBV"), whereby in exchange for payment of $550,000.00 from WBV, the Debtor would dismiss its lawsuit and release all claims against WBV and any property owned thereby. Due to significant delays in the closing of financing required by WBV to complete the settlement, the Debtor did not receive the settlement funds until December 2009. Upon receipt, and pursuant to the Final DIP Order, the Debtor paid the settlement proceeds to Mr. Audi and J.R. Audi LLC to reduce the balance of the amounts owed under the DIP Notes.

On December 31, 2009, in an effort to decrease the administrative burdens of the estate, the Debtor filed a proposal to abandon certain properties of the estate to the banks holding a secured interest therein. Specifically, the proposal sought to abandon the remaining real property in the estate to those banks who had obtained relief from the automatic stay but who had failed to foreclose and take title to their collateral properties. The abandonment of the properties became effective January 15, 2010.

On April 19, 2010, the Debtor filed a motion to obtain approval of a settlement agreement between it, Mr. Audi and Chamberlayne Road Associates, LLC ("CRA")(an entity solely owned by the Debtor). As of the Petition Date, the CRA owed Mr. Audi the original principal amount of $390,000.00 plus 9% interest from January 26, 2007, which debt the Debtor guaranteed and CRA held an unsecured claim against the Debtor in the amount of $329,971.37. CRA's note to Mr. Audi matured in January 2010 and demand was made for payment thereof. The Debtor, Mr. Audi and CRA reached a settlement whereby Mr. Audi would release the estate of all claims for amounts owed under the guaranty and CRA would grant Mr. Audi a security interest in a parcel of unencumbered real property owned by CRA valued at less than the amounts owed by CRA. The settlement was related solely to the obligations of the Debtor related to the guaranty of the CRA debt and was not related to or decrease the obligations owed by the Debtor to Mr. Audi or J.R. Audi LLC on the DIP Loans.

E. Projected Recovery of Avoidable Transfers

The Debtor does not intend to pursue preference, fraudulent conveyances, or other avoidance actions.

F. Claim Objections

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedure for handling disputed claims is set forth in section 5.2 of the Plan.

G. Liquidation Analysis

In order to make an informed decision whether to accept or reject the Plan, unsecured creditors may compare the return on their prepetition claims under the Plan to the probable return if this case were to be converted to a case under Chapter 7 of the Bankruptcy Code. Under Chapter 7, a disinterested Chapter 7 trustee is appointed by the Bankruptcy Court to liquidate a debtor's assets, and to distribute those assets in accordance with priorities established by the Bankruptcy Code. Under the Bankruptcy Code, payments of administrative claims (including the trustee's fee, trustee's counsel's fee, costs of maintaining and liquidating the assets of the estate, and taxes) are entitled to first priority. Secured creditors receive either the property on which they have a lien or the proceeds from the sale of that property. Unsecured creditors are entitled to payment only after payment of administrative expenses and payments to secured creditors.

If this case were to be converted to a case under Chapter 7, a Chapter 7 trustee would be appointed to administer the case and the Chapter 7 trustee in all likelihood would appoint an attorney to represent him or her in the case. The Chapter 7 trustee would be entitled to a commission based on the total amount of funds in the estate. In contrast, under the Plan, there is no trustee's commission to be paid in this Chapter 11 case. In addition, the Chapter 7 trustee's attorney would be required to become familiar with the case. This presupposes that a Chapter 7 estate would have any assets available to fund either administrative expenses or distributions to unsecured creditors after the satisfaction of secured creditors.

**The Debtor believes that after payment of administrative expenses and payments to secured creditors, there would be no excess assets available for unsecured creditors in a Chapter 7 liquidation. Because the secured creditors have a security interest in substantially all of the Debtor's assets, after paying administrative expenses, the unsecured creditors would get nothing.** Accordingly, the Debtor believes that administrative creditors will receive larger payments under the Plan than they would receive if the case were to be converted to a Chapter 7 case. Moreover, conversion of this case to a case under Chapter 7 in all likelihood would delay further the distribution of payments to creditors. The Debtor thus believes the Plan should be confirmed in the interest of resolving this case expeditiously.

### III. SUMMARY OF THE PLAN OF LIQUIDATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

The following summary of the Plan should not be relied on for voting purposes. You should read the Plan and discuss it with your attorney. If you do not have an attorney, you may wish to consult one. If the Plan is confirmed, it is a legally binding agreement and your recovery will be limited to the amount provided by the Plan.

A.    What is the Purpose of the Plan?

As required by the Bankruptcy Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired.

B.    Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Bankruptcy Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Bankruptcy Code. As such, the Debtor has *not* placed the following claims in any class:

1.    Administrative Expenses

Administrative expenses are costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Bankruptcy Code § 507(a)(2). Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Bankruptcy Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| Description | Estimated Amount Owed | Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | | Paid in full when due, or according to a separate agreement |
| Debtor-in-Possession Post-petition Financing ("DIP Secured Financing Claims") | $539,325.33 | Due on demand |
| Professional Fees, as approved by the Court | | Paid in full (a) on the latest of the Effective Date of the Plan, 30 business days after becoming an Allowed Claim, or according to terms of obligation, or (b) according to a separate agreement |
| Office of the U.S. Trustee Fees | | Paid in full on the Effective Date of the Plan |

2. Priority Tax Claims

Priority Tax Claims are unsecured income, employment, and other taxes described by Bankruptcy Code § 507(a)(8). Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding five (5) years from the order of relief.

The Debtor does not have any unsecured priority tax claims.

C. Classes of Claims and Equity Interests

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

1. Secured Claims

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under Bankruptcy Code § 506. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

The following chart lists all classes containing secured prepetition claims against the Debtor and their proposed treatment under the Plan:

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---------|-------------|----------------------|------------|-----------|
| Class 1 – Secured Claims for borrowings from financial institutions: | | | | |
| 1-A | BB&T Secured Claim Proof(s) of Claim = $3,570,500.60 | No | Impaired | Surrender Collateral to Creditor |
| 1-B | C & F Bank Secured Claims Proof(s) of Claim = $1,667,371.81 | No | Impaired | Surrender Collateral to Creditor |
| 1-C | Fidelity Group-Tinsley Charter Claim Proof of Claim = $85,000.00 | No | Impaired | Claims are unaltered by the Plan |
| 1-D | Fidelity Group-Hillcrest Farms Claim Proof of Claim = $308,691.00 | No | Impaired | Claims are unaltered by the Plan |
| 1-E | First Market Bank Secured Claims Proof(s) of Claim = $6,350,000.00 | No | Impaired | Surrender Collateral to Creditor |
| 1-F | Franklin Federal Secured Claims Proof(s) of Claim = $1,700,000.00 | No | Impaired | Surrender Collateral to Creditor |
| 1-G | Fulton Bank Secured Claims Proof(s) of Claim = $516,153.00 | No | Impaired | Surrender Collateral to Creditor |
| 1-H | GMAC Secured Claim Proof of Claim = $6,338.35 | No | Impaired | Vehicle loan paid in full according to terms |

| | | | | |
|---|---|---|---|---|
| 1-I | GMAC Secured Claim<br>Proof of Claim = $4,453.36 | No | Impaired | Vehicle loan paid in full according to terms |
| 1-J | Paragon Commercial Bank Secured Claims; Proof(s) of Claim = $1,208,971.00 | No | Impaired | Surrender Collateral to Creditor |
| 1-K | Regions Bank Secured Claims<br>Proof(s) of Claim = $4,812,571.00 | No | Impaired | Surrender Collateral to Creditor |
| 1-L | SunTrust Bank Secured Claim<br>Proof(s) of Claim = $5,389,700.03 | No | Impaired | Surrender Collateral to Creditor |
| 1-M | Village Bank Secured Claims<br>Proof(s) of Claim = $1,946,856.54 | No | Impaired | Surrender Collateral to Creditor |
| 1-N | Virginia Business Bank Secured Claims | No | Impaired | Surrender Collateral to Creditor |
| 1-O | Virginia Commonwealth Bank Secured Claims;<br>Proof(s) of Claim = $1,552,702.38 | No | Impaired | Surrender Collateral to Creditor |
| 1-P | Wachovia Bank Secured Claims<br>Proof(s) of Claim = $4,462,336.86 | No | Impaired | Surrender Collateral to Creditor |
| Class 2 – Secured Property Tax Claims: | | | | |
| 2 | County real property tax claims<br>Proofs of Claim:<br>Chesterfield County = $156,150.18,<br>Hanover County = $5,862.00,<br>Henrico County = $67,170.70, and<br>Prince George County = $2,429.56 | No | Impaired | County real property tax claims have been paid by the Debtor or paid or assumed by the lender that foreclosed on the underlying real property. |
| Class 3 – Other Secured Claims: | | | | |
| 3 | Butler Capital<br>Scheduled Claim = $111,656.15 | No | Impaired | Collateral surrendered to creditor pursuant to court order. |
| 3 | Creative Conservation<br>Proof(s) of Claim = $2,300.00 | No | Impaired | The legal and equitable rights of the Holders of Allowed Class 3 Claims against the Debtor, if any, are unaltered by this Plan. Because the Debtor is administratively insolvent, on the Effective Date the Holders of Class 3 Claims will not receive or retain any property on account of such Claims. |
| 3 | Daniel Newton Plumbing<br>Proof(s) of Claim = $38,141.50 | No | Impaired | The legal and equitable rights of the Holders of Allowed Class 3 Claims against the Debtor, if any, are unaltered by this Plan. Because the Debtor is administratively insolvent, on the Effective Date the Holders of Class 3 Claims will not receive or retain any property on account of such Claims. |

| 3 | Foxcreek Owners Association Proof(s) of Claim = $34,813.33 | No | Impaired | Claims were paid, assumed by lenders or converted to unsecured claims at foreclosure |
|---|---|---|---|---|
| 3 | Great American Leasing Proof(s) of Claim = $34,973.42 | No | Impaired | Executory contract was rejected pursuant to court order and assets returned to creditor. |
| 3 | The Equipment Leasing Company Proof(s) of Claim = $122,359.85 | No | Impaired | Executory contract was rejected pursuant to court order, assets were sold under creditor supervision and proceeds were paid to creditor. |
| 3 | Numerous mechanics' liens | No | Impaired | Mechanics' liens resolved under settlement procedures outlined in order entered July 31, 2009 |

2.      Priority Non-Tax Claims

Priority Non-Tax Claims are not secured by property of the bankruptcy estate but are entitled to priority under Bankruptcy Code § 507(a).

The following chart lists class 4 claims, containing priority non-tax claims against the Debtor, and their proposed treatment under the Plan:

| **Class #** | **Description** | **Insider?** (Yes or No) | **Impairment** | **Treatment** |
|---|---|---|---|---|
| Class 4 – Non-Tax Priority Claims: | | | | |
| 4 | Wage and payroll related expenditures (Bankruptcy Code § 507(a)(4)) | N/A | Impaired | Paid pursuant to Court order |
| 4 | Escrow deposits (Bankruptcy Code § 507(a)(7)) Proof(s) of Claim = $12,425.00 | No | Impaired | Because the Debtor is administratively insolvent, on the Effective Date the Holders of Class 4 Claims will not receive or retain any property on account of such Claims. |
| 4 | Miscellaneous priority claims Proof(s) of Claim = $138,056.35 | No | Impaired | Because the Debtor is administratively insolvent, on the Effective Date the Holders of Class 4 Claims will not receive or retain any property on account of such Claims. |

3.      General Unsecured Claims

General unsecured claims are not secured by property of the bankruptcy estate and are not entitled to priority under Bankruptcy Code § 507(a).

The following chart lists class 5 claims, containing general unsecured claims against the Debtor, and their proposed treatment under the Plan:

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 5 | General Unsecured Claims Estimated Claims = unknown | No | Impaired | Because the Debtor is administratively insolvent, on the Effective Date the Holders of Class 5 Claims will not receive or retain any property on account of such Claims. |

4.       Equity Interest Holders

Equity interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are equity interest holders.

Mr. Audi is the Holder of one hundred percent (100%) of the Equity Interests of the Debtor. On the Effective Date, the Equity Interests will be cancelled and the Holders of Equity Interests will not receive or retain any property on account of such Equity Interests. The equity interest holders are impaired.

The following chart lists class 6, containing equity interest holders in the Debtor, and the proposed treatment under the Plan:

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 6 | Equity Interest Holder Claims | Yes | Impaired | Equity Interests cancelled |

D.      Means of Implementing the Plan.

As of the date of this Plan, the Debtor has liquidated substantially all of its assets. On the Effective Date, the Debtor will transfer all assets (in cash or in-kind) to Holders of the DIP Secured Financing Claims on a pro rata basis, or upon such other terms that are agreed to between the Debtor and the Holders of DIP Secured Financing Claims. The Holders of DIP Secured Financing Claims shall be liable for Administrative Claims in an amount up to, but not exceeding, the fair market value of assets transferred by the Debtor to the Holders of the DIP Secured Financing Claims. Because the Debtor is administratively insolvent, it will not declare any dividends.

E.      Executory Contracts and Unexpired Leases

As of the Effective Date, the Debtor shall be deemed to have rejected any and all executory contracts and unexpired leases to which it is a party, except those executory contracts that (1) have been assumed or rejected pursuant to an Order of the Bankruptcy Court, including the Confirmation Order, entered prior to the Effective Date, or (2) are the subject of a motion to

assume that is pending before the Bankruptcy Court on the Effective Date. Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to confirmation of the Plan.

F.      Tax Consequences of Plan

**Creditors and Equity Interest Holders concerned with how the Plan may affect their tax liability should consult with their own accountants, attorneys and/or advisors.**

## IV.     CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in Bankruptcy Code §§ 1129(a) or (b). These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the Plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a Chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

A.     Who may Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Debtor believes that classes 1-A, 1-B, 1-E, 1-F, 1-G, 1-J, 1-K, 1-L, 1-M, 1-N, 1-O, and 1-P are impaired and have or will receive or retain property under the Plan; therefore, the holders of claims in each of these classes are entitled to vote to accept or reject the Plan. The Debtor believes that classes 1-C, 1-D, 1-H, and 1-I are unimpaired; therefore the holders of claims in each of these classes do not have the right to vote to accept or reject the Plan. The Debtor believes that classes 2, 3, 4, and 5 are impaired but will not receive or retain any property under the Plan on account of such claims; therefore the holders of claims in each of these classes are deemed to have rejected the Plan and do not have the right to vote to accept or reject the Plan. The Debtor believes that class 6 is impaired but is an insider, thus holders of claims in this class is not entitled to vote to accept or reject the Plan.

1.     What is an Allowed Claim or an Allowed Equity Interest?

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been

scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Federal Rule of Bankruptcy Procedure 3018(a).

**The deadline for filing a proof of claim in this case was October 8, 2009 (or November 30, 2009 for governmental entities).**

> 2.     What is an Impaired Claim or Impaired Equity Interest?

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan.  As provided in Bankruptcy Code § 1124, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

> 3.     Who is **Not** entitled to Vote

The holders of the following six types of claims and equity interests are *not* entitled to vote:

- Holders of claims and equity interests that have been disallowed by an order of the Court;

- Holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes;

- Holders of claims or equity interests in unimpaired classes;

- Holders of claims entitled to priority pursuant to Bankruptcy Code §§ 507(a)(2), (a)(3), or (a)(8);

- Holders of claims or equity interests in classes that do not receive or retain any value under the Plan; and

- Administrative expenses.

**Even if you are not entitled to vote on the Plan, you have a right to object to the confirmation of the Plan and to the adequacy of the disclosure statement.**

> 4.     Who can Vote in more than one Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise holds claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

B.   <u>Votes Necessary to Confirm the Plan</u>

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section B.2.

1.   Votes Necessary for a Class to Accept the Plan

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

2.   Treatment of Nonaccepting Classes

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by Bankruptcy Code § 1129.  A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Bankruptcy Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of Bankruptcy Code § 1129(a)(8), does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

**You should consult your own attorney if a "cram down" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.**

C.   <u>Liquidation Analysis</u>

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation.

D.   <u>Feasibility</u>

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

**You should consult with your accountant of other financial advisor if you have any questions pertaining to these projections.**

## V.     EFFECT OF CONFIRMATION OF PLAN

A.     No Discharge of Debtor

In accordance with Bankruptcy Code § 1141(d)(3), the debtor will not receive any discharge of debt in this bankruptcy case.

B.     Modification of Plan

The Debtor may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or re-voting on the Plan. The Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Court authorizes the proposed modifications after notice and a hearing.

C.     Final Decree

Once the estate has been fully administered, as provided in Federal Rule of Bankruptcy Procedure 3022, the Debtor, or such party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

## VI.     CONCLUSION

The Debtor believes that its liquidation, as set forth in the Plan of Liquidation and summarized in this Disclosure Statement, is in the best interests of the creditors of the bankruptcy estate and other interested parties and urges all concerned to vote to approve the Plan of Liquidation.


Dated: June 2, 2010                          PROSPECT HOMES OF RICHMOND, INC.
                                             By Counsel


/s/ John C. Smith
Roy M. Terry, Jr. VSB No. 17764
John C. Smith, VSB No. 44556
Elizabeth L. Gunn, VSB No. 71044
DurretteBradshaw PLC
600 East Main Street, 20th Floor
Richmond, Virginia 23219
(804) 775-6900
Fax: (804) 775-6911
Counsel for Prospect Homes of Richmond, Inc.

F:\P\Prospect Homes of Richmond, Inc\Plan\Disclosure v1.3.doc

**EXHIBIT A - CHAPTER 11 PLAN OF LIQUIDATION**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

In re: **PROSPECT HOMES OF RICHMOND, INC.,**     **Case No. 09-33528-KRH**
                     **Debtor.**               **Chapter 11**
     **Employer Identification No. 54-1452058**

**CHAPTER 11 PLAN OF LIQUIDATION**
**June 2, 2010**

COMES NOW Prospect Homes of Richmond, Inc. (the "Debtor"), as debtor in possession, and proposes this Plan of Liquidation (the "Plan") pursuant to Chapter 11 of the Bankruptcy Code.

**ARTICLE I—DEFINED TERMS AND RULES OF INTERPRETATION**

1.1   <u>Definitions</u>. For purposes of the Plan, except as otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, will have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable

<u>Administrative Claim</u>. A Claim that is entitled to priority under section 507(a) of the Bankruptcy Code.

<u>Allowed</u>. With respect to Claims and Interests, (a) any Claim against or Interest in the Debtor, proof of which was timely filed or by order of the Bankruptcy Court was not required to be filed or (b) any Claim or Interest that has been, or hereafter is, listed in the Debtor's Schedules as liquidated in amount and not disputed or contingent; and, in each such case in (a) and (b) above, as to which either (i) no objection to the allowance thereof or other similar pleading has been filed within the applicable period set forth in section 5.1, or (ii) an objection or similar pleading has been filed and the Claim or Interest has been allowed by a Final Order of the Bankruptcy Court (but only to the extent so allowed).

<u>Ballot</u>. The form of the ballot distributed to Holders of Claims and Interests for acceptance or rejection of the Plan.

<u>Bankruptcy Case</u>. The Debtor's Chapter 11 Case No. 09-33528-KRH pending before the Bankruptcy Court.

<u>Bankruptcy Code</u>. The United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq*., and any amendment thereof.

Roy M. Terry, Jr. VSB No. 17764
John C. Smith, VSB No. 44556
Elizabeth L. Gunn, VSB No. 71044
DurretteBradshaw PLC
600 East Main Street, 20th Floor
Richmond, Virginia 23219
(804) 775-6900
Fax: (804) 775-6911
Counsel for Prospect Homes of Richmond, Inc.

<u>Bankruptcy Court</u>. The United States Bankruptcy Court for the Eastern District of Virginia (Richmond Division), having jurisdiction of the above-captioned Chapter 11 case of the Debtor.

<u>Bankruptcy Rules</u>. The Federal Rules of Bankruptcy Procedure under Title 28 of the United States Code, 28 U.S.C. § 205 (1978), together with the Local Rules of the Bankruptcy Court for the Eastern District of Virginia promulgated under Title 28 of the United States Code, 28 U.S.C. § 154 (1978), as such rules have been or may hereafter be amended.

<u>Bar Date</u>. The Bar Date shall mean October 8, 2009 for all non-governmental claimants and November 30, 2009 for all governmental claimants.

<u>BB&T</u>. Branch Banking and Trust Company.

<u>Business Day</u>. A day other than Saturday or Sunday on which banks in Richmond, Virginia, are not authorized or required to be closed pursuant to applicable law.

<u>C & F Bank</u>. Citizens and Farmer Bank.

<u>Cash</u>. Payment by check issued by the Debtor with respect to any payment pursuant to the Plan.

<u>Claims</u>. All claims, as defined in section 101(5) of the Bankruptcy Code against the Debtor, whether or not scheduled, liquidated or unliquidated, absolute or contingent, including, without limitation, all claims arising from the Debtor's rejection of any executory contract or unexpired lease.

<u>Class</u>. A group of Claims or Interests which are substantially similar to each other, as classified pursuant to the Plan.

<u>Confirmation Date</u>. The date on which the clerk of the Bankruptcy Court enters the confirmation order confirming this Plan on the docket.

<u>Confirmation Hearings</u>. The hearing or hearings to be held by the Bankruptcy Court to consider confirmation of this Plan, as contemplated by section 1128(a) of the Bankruptcy Code.

<u>Confirmation Order</u>. The order of the Bankruptcy Court confirming this Plan.

<u>Debtor</u>. Prospect Homes of Richmond, Inc. in its capacity as pre-petition, post-petition or post-confirmation debtor depending upon the context.

<u>Debtor's Counsel</u>. DurretteBradshaw PLC, 1111 East Main Street, 16th Floor, Richmond, Virginia 23219.

<u>DIP Secured Financing Claim</u>. An Administrative Claim for post-petition debtor-in-possession financing approved by *Final Order Authorizing Debtor-In-Possession to Incur Post-Petition Secured Indebtedness*, entered August 7, 2009 (Docket # 215).

<u>Discharged Property</u>. Any portion of, or all of, the Fulton Bank Collateral or Virginia Business Bank Collateral in which a Discharge Event has occurred.

<u>Discharge Event</u>. Discharge Event shall have the meaning ascribed to it in section 4.3(g) herein.

Disclosure Statement. The Disclosure Statement prepared in connection with this Plan pursuant to section 1125 of the Bankruptcy Code and approved by the Bankruptcy Court, as the same may be modified or amended from time to time, including all exhibits and attachments thereto.

Disputed. With respect to (i) an Interest, means an Interest for which a proof of Interest has been filed and as to which an objection has been timely filed by the Debtor or any party in interest which objection has not been withdrawn or determined by Final Order, and (ii) a Claim, means either (a) a Claim which is a Contingent Claim and has not become fixed and absolute or (b) a Claim for which proof of Claim has been Filed and as to which an objection has been timely filed by the Debtor or any party in interest which objection has not been withdrawn or determined by a Final Order, *provided, however*, that in the event the Bankruptcy Court shall estimate a Disputed Claim for purposes of allowance pursuant to section 502(c) of the Bankruptcy Code, such estimation shall constitute and represent the maximum amount in which such Claim may ultimately become an Allowed Claim. Prior to the time that an objection has been or may be timely filed for the purposes of the Plan, a Claim shall be considered a Disputed Claim to the extent that the amount of the Claim specified in the proof of claim exceeds the amount of the Claim scheduled by the Debtor as other than disputed, contingent or unliquidated.

Distribution Agent. The Debtor, or an entity retained by the Debtor, for the distribution of all property to be distributed under the Plan to the Holders of Allowed Administrative Claims, Priority Claims and the Allowed Claims.

Distributions. The Cash and other property to be distributed under the Plan to Holders of Allowed Claims and Interests.

Effective Date. The first Business Day on which the conditions specified in section 8.2 of this Plan have been satisfied or waived in accordance with this Plan.

Estate. The legal entity administering the property of the Debtor immediately prior to the Effective Date.

Exhibit. An exhibit annexed to either this Plan or to the Disclosure Statement.

Exhibit Filing Date. The date by which all Exhibits shall be filed with the Bankruptcy Court, which date shall be at least seven (7) days prior to the voting deadline or such later date as may be approved by the Bankruptcy Court.

Filed. A document filed with the Bankruptcy Court in the Bankruptcy Case.

Final Order. An order of the Bankruptcy Court or other court having jurisdiction over any matter from which no appeal can be taken or with respect to which the time period for taking an appeal has lapsed or terminated, or as to which all appeals have been withdrawn or dismissed with prejudice.

Finally Determined. The date on which any Claim is finally determined shall, for the purposes related to Claims or Interests to which objections have been made, be deemed to be the date on which an order allowing, disallowing, or in part allowing and disallowing, that Claim becomes a Final Order.

First Market Bank. Union First Market Bank.

**Franklin Federal**. Franklin Federal Savings and Loan Association.

**Fulton Bank**. Fulton Bank, National Association.

**Fulton Bank Collateral**. Any and all property or interests in property of the bankruptcy estate that is subject to a valid and enforceable lien to secure a Fulton Bank Secured Claim; provided that, Fulton Bank Collateral shall not include Discharged Property.

**Hillcrest Farms**. Hillcrest Farms of Henrico, Inc.

**Holder**. The beneficial owner of any Claim or Interest.

**Interest**. The interest of any Holder of any equity security in the Debtor.

**Petition Date**. June 2, 2009, the date on which the Debtor filed its voluntary petition for relief with the Bankruptcy Court, commencing the Bankruptcy Case.

**Plan**. This Plan of Liquidation, either in its present form or as it may be amended from time to time.

**Priority Non-Tax Claim**. A Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than an Administrative Claim or a Priority Tax Claim.

**Priority Tax Claim**. A Claim of a governmental entity entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

**Property**. Any interest of any kind in any property or asset, whether real, personal, tangible, intangible or mixed, of the Debtor, within the meaning of section 541 of the Bankruptcy Code.

**Schedules**. The Schedules of Assets and Liabilities filed by the Debtor in accordance with section 521 of the Bankruptcy Code, as such Schedules may be amended from time to time.

**Secured Claim**. A Claim that is subject to setoff under section 553 of the Bankruptcy Code, or is secured by a lien on property of the Debtor, to the extent of the value of the interest of the Holder of such Claim in such property as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code or the class of which such claim is a part makes a valid election under section 1111(b) of the Bankruptcy Code, or by agreement between the Debtor and the Holder of the Secured Claim.

**Tinsley Charter, LLC**. A Virginia limited liability company wholly owned by the Debtor.

**Unsecured Claim**. A Claim that is not secured by a lien or charge on property in which the Debtor has an interest which is not an Administrative Claim or Priority Claim.

**Virginia Business Bank Collateral**. Any and all property or interests in property of the bankruptcy estate that is subject to a valid and enforceable lien to secure a Virginia Business Bank Secured Claim; provided that, Virginia Business Bank Collateral shall not include Discharged Property.

**Wachovia Bank**. Wachovia Bank, National Association.

1.2 <u>Rules of Interpretation</u>. For purposes of the Plan, except as otherwise provided herein: (a) whenever it appears appropriate for the context, words and phrases used herein in the singular shall be deemed to include the plural, and words and phrases used herein in the plural shall be deemed to include the singular, and words and phrases used herein denoting any gender shall be deemed to include all genders; (b) unless other provided in this Plan, any reference in this Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to any agreement, instrument or other document (including references to this Plan) shall be deemed to include references to such agreement, instrument or other document as amended, modified, varied, supplemented or replaced from time to time in accordance with its terms, the Bankruptcy Code or the Bankruptcy Rules, as may be applicable; (d) any reference in this Plan to any person shall be deemed to be references to or to include as appropriate, such person's respective successors, transferees and assigns; (e) all references in this Plan to Articles, Sections and Exhibits are to Articles, Sections and Exhibits in this Plan; (f) the words "this Plan," "hereto," "herein," "hereunder," "hereof," and expressions of similar import refer to this Plan as a whole, together with any appendices, schedules and exhibits hereto, and not to any particular Article, Section, subsection, clause or other portion of this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) subject to the provisions of any contract, certificates of incorporation, by-laws, instrument, release or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules; (i) accounting terms and phrases used herein and not otherwise defined herein shall have the meanings ascribed to such terms in conformity with generally accepted accounting principles, unless the context clearly requires otherwise; and (j) the rules of construction set forth in section 102 of the Bankruptcy code will apply.

1.3 <u>Computation of Time</u>. In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided for, the provisions of Bankruptcy Rule 9006(a) shall apply.

1.4 <u>Exhibits</u>. All Exhibits are incorporated into and are a part of this Plan as set forth in full herein and, to the extent annexed hereto, such Exhibits shall be filed with the Bankruptcy Court on or before the Exhibit Filing Date.

## ARTICLE II—CLASSIFICATION OF CLAIMS AND INTERESTS

2.1 All Claims and Interests, except Administrative Claims and Priority Claims, are placed in the Classes set forth below. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and are treated as discussed below in sections 4.1, and 4.2, respectively.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any remainder of the Claim or Interest falls within the description of such other Classes.

A Claim is also placed in a particular Class for the purposes of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released or otherwise satisfied prior to the Effective Date.

2.2    <u>Allowed Claims and Interests</u>. All Allowed Claims and Interests are divided into the following Classes:

(a)    **Class 1**: Class 1 consists of all Secured Claims that are for borrowings from financial institutions:

    (i)    **Class 1-A (BB&T Secured Claims)**: Class 1-A consists of all BB&T Secured Claims that may exist against the Debtor.

    (ii)    **Class 1-B (C & F Bank Secured Claims)**: Class 1-B consists of all C & F Bank Secured Claims that may exist against the Debtor.

    (iii)    **Class 1-C (Fidelity Group, LLC Tinsley Charter Claim)**: Class 1-C consists of all Fidelity Group, LLC Secured Claims that may exist against the Debtor related to a loan between Fidelity Group, LLC and Tinsley Charter, LLC.

    (iv)    **Class 1-D (Fidelity Group, LLC Hillcrest Farms Claim)**: Class 1-D consists of all Fidelity Group, LLC Secured Claims that may exist against the Debtor related to a loan between Fidelity Group, LLC and Hillcrest Farms.

    (v)    **Class 1-E (First Market Bank Secured Claims)**: Class 1-E consists of all First Market Bank Secured Claims that may exist against the Debtor.

    (vi)    **Class 1-F (Franklin Federal Secured Claims)**: Class 1-F consists of all Franklin Federal Secured Claims that may exist against the Debtor.

    (vii)    **Class 1-G (Fulton Bank Secured Claims)**: Class 1-G consists of all Fulton Bank Secured Claims that may exist against the Debtor.

    (viii)    **Class 1-H (GMAC Secured Claim)**: Class 1-H consists of GMAC's Claim against the Debtor Secured by a 2005 Chevrolet Silverado (Vehicle Identification #: 1GCEK19B95E144215).

    (ix)    **Class 1-I (GMAC Secured Claim)**: Class 1-I consists of GMAC's Claim against the Debtor Secured by a 2004 Chevrolet Silverado (Vehicle Identification #: 2GCEK13T541335695).

    (x)    **Class 1-J (Paragon Commercial Bank Secured Claims)**: Class 1-J consists of all Paragon Commercial Bank Secured Claims that may exist against the Debtor.

    (xi)    **Class 1-K (Regions Bank Secured Claims)**: Class 1-K consists of all Regions Bank Secured Claims that may exist against the Debtor.

    (xii)    **Class 1-L (SunTrust Bank Secured Claims)**: Class 1-L consists of all SunTrust Bank Secured Claims that may exist against the Debtor.

    (xiii)    **Class 1-M (Village Bank Secured Claims)**: Class 1-M consists of all Village Bank Secured Claims that may exist against the Debtor.

(xiv) **Class 1-N (Virginia Business Bank Secured Claims)**: Class 1-N consists of all Virginia Business Bank Secured Claims that may exist against the Debtor.

(xv) **Class 1-O (Virginia Commonwealth Bank Secured Claims)**: Class 1-O consists of all Virginia Commonwealth Bank Secured Claims that may exist against the Debtor.

(xvi) **Class 1-P (Wachovia Bank Secured Claims)**: Class 1-P consists of all Wachovia Bank Secured Claims that may exist against the Debtor.

(b) **Class 2 (Secured Property Tax Claims)**: Class 2 consists of all Secured Claims that are for real property taxes.

(c) **Class 3 (Other Secured Claims)**: Class 3 consists of all Secured Claims (including mechanics' liens) that are not in another class.

(d) **Class 4 (Non-Tax Priority Claims)**: Class 4 consists of all Non-Tax Priority Claims.

(e) **Class 5 (General Unsecured Claims)**: Class 5 consists of all General Unsecured Claims.

(f) **Class 6 (Equity Interests)**: Class 6 consists of all Allowed Interests in the stock of the Debtor.

## ARTICLE III—IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS IMPAIRED OR UNIMPAIRED BY THE PLAN

3.1    Impaired Classes of Claims and Interests. The following Classes are Impaired by this Plan:

| | |
|---|---|
| Class 1-A | (BB&T Secured Claims) |
| Class 1-B | (C & F Bank Secured Claims) |
| Class 1-E | (First Market Bank Secured Claims) |
| Class 1-F | (Franklin Federal Secured Claims) |
| Class 1-G | (Fulton Bank Secured Claims) |
| Class 1-J | (Paragon Commercial Bank Secured Claims) |
| Class 1-K | (Regions Bank Secured Claims) |
| Class 1-L | (SunTrust Bank Secured Claims) |
| Class 1-M | (Village Bank Secured Claims) |
| Class 1-N | (Virginia Business Bank Secured Claims) |
| Class 1-O | (Virginia Commonwealth Bank Secured Claims) |
| Class 1-P | (Wachovia Bank Secured Claims) |
| Class 2 | (Secured Property Tax Claims) |
| Class 3 | (Other Secured Claims) |
| Class 4 | (Priority Non-Tax Claims) |
| Class 5 | (General Unsecured Claims) |
| Class 6 | (Equity Interests) |

3.2    Unimpaired Classes of Claims. The following Classes are Unimpaired by this Plan:

| | |
|---|---|
| Class 1-C | (Fidelity Group, LLC Tinsley Charter Claim) |
| Class 1-D | (Fidelity Group, LLC Hillcrest Farms Claim) |
| Class 1-H | (GMAC Secured Claim) |
| Class 1-I | (GMAC Secured Claim) |

# ARTICLE IV—TREATMENT OF CLAIMS AND INTERESTS

## Unclassified Claims

4.1   **Administrative Claims**: Except as otherwise agreed to by the Debtor and the Holder of an Administrative Claim, each Holder of an Allowed Administrative Claim shall be paid the full amount of such Allowed Claim, in Cash, on (a) the latest to occur of (i) the Effective Date (or as soon as practicable thereafter), (ii) within thirty (30) Business Days after the date on which such Administrative Claim becomes an Allowed Claim (an "Allowed Administrative Claim"), and (iii) the date when payment of such Allowed Administrative Claim becomes due in accordance with its terms; provided that all liabilities incurred by the Debtor in the ordinary course of business during the Bankruptcy Case shall be paid in the ordinary course of business when due or (b) upon such other terms that are agreed to between the Debtor and the Holder of such Allowed Administrative Claim. All pre-confirmation and post-confirmation quarterly disbursement fees to the United States Trustee pursuant to 28 U.S.C. § 1930 will be paid, in full and timely fashion, until the earliest of when the case is dismissed, converted, or closed after issuance of a final decree.

4.2   **Priority Tax Claims**: Each Holder of an Allowed Priority Tax Claim shall be paid either (a) in full, in Cash, on the latest to occur of (i) the Effective Date (or as soon as practicable thereafter), (ii) within thirty (30) days of the date on which such Priority Tax Claim becomes as Allowed Claim, and (iii) the date when payment of such Priority Tax Claim becomes due in accordance with its terms, (b) upon such other terms that are agreed to between the Debtor and the Holder of such Allowed Priority Tax Claim, or (c) at the option of the Debtor, Cash in an aggregate amount of such Allowed Priority Tax Claim payable in installments over a period of not more than five years after the Petition Date, pursuant to section 1129(a)(9)(c) of the Bankruptcy Code.

4.3   Post-petition payment of real property tax claims or homeowner association claims by a party (or parties) other than the Debtor shall not entitle such party (or parties) to an Administrative Claim or Priority Tax Claim.

## Classified Claims

4.4   **Class 1**:

    (a)   **Class 1-A (BB&T Secured Claims)**: The legal, equitable and contract rights of the Holder of Allowed Class 1-A Claims against the Debtor are unaltered by this Plan. The Debtor believes all Allowed Class 1-A Claims have been satisfied by foreclosures occurring after an order was entered September 8, 2009 (Docket # 243) granting BB&T relief from stay.

    (b)   **Class 1-B (C & F Bank Secured Claims)**: The legal, equitable and contract rights of the Holder of Allowed Class 1-B Claims against the Debtor are unaltered by this Plan. The Debtor believes all Allowed Class 1-B Claims have been satisfied by foreclosures occurring after an order was entered October 7, 2009 (Docket # 287) granting C & F Bank relief from stay.

    (c)   **Class 1-C (Fidelity Group, LLC Tinsley Charter Claim)**: The legal, equitable and contract rights of the Holder of Allowed Class 1-C Claims against the Debtor are

unaltered by this Plan. The Debtor believes all Allowed Class 1-C Claims against the Debtor are contingent and unsecured.

(d) **Class 1-D (Fidelity Group, LLC Hillcrest Farms Claim)**: The legal, equitable and contract rights of the Holder of Allowed Class 1-D Claims against the Debtor are unaltered by this Plan. The Debtor believes all Allowed Class 1-D Claims against the Debtor are contingent and unsecured.

(e) **Class 1-E (First Market Bank Secured Claims)**: The legal, equitable and contract rights of the Holder of Allowed Class 1-E Claims against the Debtor were altered by a settlement agreement approved by order entered October 7, 2009 (Docket # 286). The Debtor believes all Allowed Class 1-E Claims have been satisfied.

(f) **Class 1-F (Franklin Federal Secured Claims)**: The legal, equitable and contract rights of the Holder of Allowed Class 1-F Claims against the Debtor are unaltered by this Plan. The Debtor believes all Allowed Class 1-F Claims have been or will be satisfied by foreclosures occurring after order entered February 10, 2010 (Docket # 373) granting Franklin Federal Savings Bank relief from stay with respect to certain real properties. Moreover, by order entered February 22, 2010 (Docket # 385), the Debtor's bankruptcy estate abandoned all property of the estate subject to the secured claims of Regions Bank, Wachovia Bank, or Franklin Federal.

(g) **Class 1-G (Fulton Bank Secured Claims)**: The legal, equitable and contract rights of the Holder of Allowed Class 1-G Claims against the Debtor were altered by a settlement agreement approved by order entered October 23, 2009 (Docket # 303), which also granted Fulton Bank relief from stay. In addition, on, or as soon as reasonably practicable after the Effective Date, each Allowed Class 1-G Claim shall be satisfied, in full settlement, release and discharge of, and in exchange for, such Allowed Class 1-G Claims, by the transfer of any Fulton Bank Collateral remaining in the Debtor's estate to the Holder of such Allowed Class 1-G Claim, subject to all valid and enforceable Claims, including, but not limited to, all liens senior to Fulton Bank Secured Claims; provided that, the Holder of such Class 1-G Claim agrees in writing to the Debtor prior to the Confirmation Hearing to accept the Fulton Bank Collateral pursuant to a deed reasonably satisfactory to the Debtor. In the event that the Holder of an Allowed Class 1-G Claim accepts any or all of the Fulton Bank Collateral, the difference between the value of the Fulton Bank Collateral and the amount of the Fulton Bank Secured Claims, except to the extent previously waived or reduced pursuant to a bankruptcy court order, shall become a deficiency claim entitled to treatment as a Class 5 General Unsecured Claim. In the event the Holder of a Class 1-G Claim does not accept any or all of the Fulton Bank Collateral, on terms and conditions reasonably satisfactory to the Debtor (a "Discharge Event"): such Fulton Bank Collateral shall be deemed Discharged Property; Fulton Bank shall be deemed to have released, waived and discharged the Fulton Bank Secured Claims arising with respect to such Discharged Property; Fulton Bank shall be barred from pursuing any guarantors for the released, waived and discharged Fulton Bank Secured Claims; and the Debtor will retain the rights to the Discharged Property free and clear of all Fulton Bank Secured Claims with respect to such property. Upon such Discharge Event, at the Debtor's discretion, the Discharged Property or any designated rights with respect

thereto, may be transferred to the Holders of DIP Secured Financing Claims free and clear of all Fulton Bank Secured Claims with respect to such property.

(h) **Class 1-H (GMAC Secured Claim)**: The legal, equitable and contract rights of the Holder of Allowed Class 1-H Claims against the Debtor are unaltered by this Plan. The Debtor believes all Allowed Class 1-H Claims have been paid in full following sale of the vehicle pursuant to order entered June 29, 2009, authorizing *de minimus* asset sales (Docket # 120).

(i) **Class 1-I (GMAC Secured Claim)**: The legal, equitable and contract rights of the Holder of Allowed Class 1-I Claims against the Debtor are unaltered by this Plan. The Debtor believes all Allowed Class 1-I Claims have been paid in full by vehicle payments made in the ordinary course of business.

(j) **Class 1-J (Paragon Commercial Bank Secured Claims)**: The legal, equitable and contract rights of the Holder of Allowed Class 1-J Claims against the Debtor are unaltered by this Plan. The Debtor believes all Allowed Class 1-J Claims have been or will be satisfied by foreclosures occurring after order entered December 7, 2009 (Docket # 341) granting Paragon Commercial Bank relief from stay with respect to certain real properties.

(k) **Class 1-K (Regions Bank Secured Claims)**: The legal, equitable and contract rights of the Holder of Allowed Class 1-K Claims against the Debtor are unaltered by this Plan. The Debtor believes all Allowed Class 1-K Claims have been or will be satisfied by foreclosures occurring after order entered August 25, 2009 (Docket # 232) granting Regions Bank relief from stay with respect to certain real properties. Moreover, by order entered February 22, 2010 (Docket # 385), the Debtor's bankruptcy estate abandoned all property of the estate subject to the secured claims of Regions Bank, Wachovia Bank, or Franklin Federal.

(l) **Class 1-L (SunTrust Bank Secured Claim)**: The legal, equitable and contract rights of the Holder of Allowed Class 1-L Claims against the Debtor were altered by a settlement agreement approved by order entered February 22, 2010 (Docket # 386). The Debtor believes all Allowed Class 1-L Claims have been or will be satisfied by foreclosures occurring after order entered November 6, 2009 (Docket # 327), order entered December 7, 2009 (Docket # 340), and order entered February 22, 2010 (Docket # 386).

(m) **Class 1-M (Village Bank Secured Claims)**: The legal, equitable and contract rights of the Holder of Allowed Class 1-M Claims against the Debtor are unaltered by this Plan. The Debtor believes all Allowed Class 1-M Claims have been satisfied by foreclosures occurring after an order was entered September 10, 2009 (Docket # 247) granting Village Bank relief from stay.

(n) **Class 1-N (Virginia Business Bank Secured Claims)**: On, or as soon as reasonably practicable after the Effective Date, each Allowed Class 1-N Claim shall be satisfied, in full settlement, release and discharge of, and in exchange for, such Allowed Class 1-N Claims, by the transfer of any Virginia Business Bank Collateral remaining in the Debtor's estate or Chamberlayne Road Associates, LLC to the Holder of such Allowed Class 1-N Claim, subject to all valid and enforceable Claims, including, but not limited

to, all liens senior to Virginia Business Bank Secured Claims; provided that, the Holder of such Class 1-N Claim agrees in writing to the Debtor prior to the Confirmation Hearing to accept the Virginia Business Bank Collateral pursuant to a deed reasonably satisfactory to the Debtor. In the event that the Holder of an Allowed Class 1-N Claim accepts any or all of the Virginia Business Bank Collateral, the difference between the value of the Virginia Business Bank Collateral and the amount of the Virginia Business Bank Secured Claims, except to the extent previously waived or reduced pursuant to a bankruptcy court order, shall become a deficiency claim entitled to treatment as a Class 5 General Unsecured Claim. In the event the Holder of a Class 1-N Claim does not accept any or all of the Virginia Business Bank Collateral, on terms and conditions reasonably satisfactory to the Debtor (a "Discharge Event"): such Virginia Business Bank Collateral shall be deemed Discharged Property; Virginia Business Bank shall be deemed to have released, waived and discharged the Virginia Business Bank Secured Claims arising with respect to such Discharged Property; Virginia Business Bank shall be barred from pursuing any guarantors for the released, waived and discharged Virginia Business Bank Secured Claims; and the Debtor will retain the rights to the Discharged Property free and clear of all Virginia Business Bank Secured Claims with respect to such property. Upon such Discharge Event, at the Debtor's discretion, the Discharged Property or any designated rights with respect thereto, may be transferred to the Holders of DIP Secured Financing Claims free and clear of all Virginia Business Bank Secured Claims with respect to such property.

(o) **Class 1-O (Virginia Commonwealth Bank Secured Claims)**: The legal, equitable and contract rights of the Holder of Allowed Class 1-O Claims against the Debtor were altered by a settlement agreement approved by order entered October 23, 2009 (Docket # 305), which also granted Virginia Commonwealth Bank relief from stay. The Debtor believes all Allowed Class 1-O Claims have been satisfied by foreclosures occurring after entry of the order granting Virginia Commonwealth Bank relief from stay.

(p) **Class 1-P (Wachovia Bank Secured Claims)**: The legal, equitable and contract rights of the Holder of Allowed Class 1-P Claims against the Debtor are unaltered by this Plan. The Debtor believes all Allowed Class 1-P Claims have been or will be satisfied by foreclosures occurring after order entered October 23, 2009 (Docket # 304) granting Wachovia Bank relief from stay with respect to certain real properties. Moreover, by order entered February 22, 2010 (Docket # 385), the Debtor's bankruptcy estate abandoned all property of the estate subject to the secured claims of Regions Bank, Wachovia Bank, or Franklin Federal.

4.5 **Class 2 (Secured Property Tax Claims)**: The Debtor believes that all Secured Property Tax Claims have been paid  by the Debtor or paid or assumed by the lenders that foreclosed on their collateral. Because the Debtor is administratively insolvent, on the Effective Date the Holders of Class 2 Claims will not receive or retain any property on account of such Claims.

Because the Holders of Class 2 Claims will not receive or retain any property under the Plan on account of such claims, Class 2 is impaired and is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

4.6 **Class 3 (Other Secured Claims)**: The Debtor believes that substantially all Other Secured Claims have been resolved, including claims for mechanics' liens that were resolved under the order establishing procedures to settle certain claims entered July 31, 2009 (Docket # 200). Because the Debtor is administratively insolvent, on the Effective Date the Holders of Class 3 Claims will not receive or retain any additional property on account of such Claims.

Because the Holders of Class 3 Claims will not receive or retain any additional property under the Plan on account of such claims, Class 3 is <u>impaired</u> and is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

4.7 **Class 4 (Priority Non-Tax Claims)**: Because the Debtor is administratively insolvent, on the Effective Date the Holders of Class 4 Claims will not receive or retain any property on account of such Claims.

Because the Holders of Class 4 Claims will not receive or retain any property under the Plan on account of such claims, Class 4 is <u>impaired</u> and is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

4.8 **Class 5 (General Unsecured Claims)**: Because the Debtor is administratively insolvent, on the Effective Date the Holders of Class 5 Claims will not receive or retain any property on account of such Claims.

Because the Holders of Class 5 Claims will not receive or retain any property under the Plan on account of such claims, Class 5 is <u>impaired</u> and is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

4.9 **Class 6 (Equity Interests)**: On the Effective Date the Equity Interests will be cancelled and the Holders of Equity Interests will not receive or retain any property on account of such Equity Interests.

Because Class 6 does not entitle Holder(s) of Class 6 Claim(s) or interest(s) to receive or retain any property under the Plan on account of such Claim(s) or interest(s), Class 6 is <u>impaired</u> and is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

## ARTICLE V—BAR DATE; TREATMENT OF DISPUTED CLAIMS

5.1 <u>Bar Dates for Claims</u>. The deadline for filing with the Bankruptcy Court any and all Claims against the Debtor, other than Claims arising from the rejection of any executory contract or unexpired lease pursuant to this Plan, was October 8, 2009 for all non-governmental claimants and November 30, 2009 for all governmental claimants. Any such Claim not filed prior to the Bar Date is forever barred and shall be conclusively deemed discharged and disallowed for the purposes of voting on this Plan or receiving any distributions hereunder. Objections to Claims shall be filed with the Bankruptcy Court within thirty (30) days after the Effective Date, except with respect to Claims relating to the rejection of executory contracts or unexpired leases hereunder, in which case objections shall be filed by the earlier of (i) the Effective Date or (ii) within thirty (30) days after such Claims are filed and served on the Debtor and counsel to the Debtor.

5.2 <u>Disputed Claims</u>. Any party in interest may object to the allowance of any Claim or Interest filed with the Bankruptcy Court. Objections will be litigated to a Final Order.

However, the Debtor may compromise and settle, withdraw or resolve by any other method approved by the Bankruptcy Court, any objections to a Disputed Claim or Interest, and may seek the Bankruptcy Court's estimation of any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code.

5.3 <u>Distributions With Respect to Disputed Claims and Interests</u>. Only Allowed Claims and Interests are entitled to receive distributions under the Plan. Until a Disputed Claim or Interest becomes an Allowed Claim or Interest, no distributions otherwise available to the Holder of such Claim or Interest will be made. As soon as reasonably practicable after a Disputed Claim or Interest becomes an Allowed Claim or Interest, or on such date as the Plan shall otherwise provide, the Holder of such Allowed Claim or Interest shall receive all payments and distributions to which such Holder is then entitled under the Plan.

## ARTICLE VI—EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1 <u>Assumption or Rejection</u>. As of the Effective Date, the Debtor shall be deemed to have rejected any and all executory contracts and unexpired leases to which it is a party, except those executory contracts that (a) have been assumed or rejected pursuant to an Order of the Bankruptcy Court, including the Confirmation Order, entered prior to the Effective Date, or (b) are the subject of a motion to assume that is pending before the Bankruptcy Court on the Effective Date.

6.2 <u>Expired Contracts and Leases</u>. Any contract or lease that expired pursuant to its terms prior to the Effective Date, and that has not been assumed or rejected by the Final Order prior to the Effective Date, is hereby specifically rejected as of the Confirmation Date.

6.3 <u>Bar to Rejection Damages</u>. If the rejection by the debtor of an executory contract or unexpired lease pursuant to the Plan results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the debtor unless a proof of claim is Filed within thirty (30) days after service of the earlier of (a) notice of the effective date of rejection of such executory contract or unexpired lease or (b) other notice that the executory contract or unexpired lease has been rejected. Nothing in this section shall revive or deem to revive a previously disallowed Claim or extend a previously established bar date, if applicable. The bar date for filing a Claim with respect to an executory contract or unexpired lease other than pursuant to this Plan shall be the Bar Date or order approving such rejection.

6.4 <u>Claims Arising from Acceptance or Rejection</u>. All Allowed Claims arising from the acceptance of an Executory Contract shall be treated as Administrative Claims; all rejection claims shall be treated as Class 5 Claims.

## ARTICLE VII—MEANS FOR IMPLEMENTATION OF THE PLAN

7.1 <u>Sources of Funds</u>. As of the date of this Plan, the Debtor has liquidated all of its assets except: certain office furniture and equipment (approximately worth $5,000.00); three (3) vehicles (appraised by CarMax at $42,000.00); and a disputed interest in a ten thousand dollar ($10,000.00) escrow account held by a realtor under a purchase and sale contract. The Debtor also is the sole interest holder in seven (7) limited liability companies that have little or no value: Greenbriar Development, LLC; Randolph Estates, LLC; Rockwood Terrace, LLC; Stigall Drive, L.L.C.; Kingsland II, LLC; Tinsley Charter, LLC; and

Chamberlayne Road Associates, LLC. All of these entities are insolvent. The first four entities do not have any assets of value. Kingsland II, LLC owns a piece of property that has nominal value - the property is a dry pond bed which is the result of a dam that washed out during a hurricane approximately six years ago, and a strip of property along the former shore of that pond bed. Fulton Bank has a security interest in property held by Tinsley Charter, LLC, and has foreclosed on all property except a clubhouse, pool and common area, which Fulton Bank intends to convey to the ultimate purchaser of the development. Chamberlayne Road Associates, LLC's assets are fully encumbered by Virginia Business Bank and Joseph R. Audi. As of June 2, 2010, the Debtor has $66,494.59 in cash. The Debtor is administratively insolvent (*i.e.*, the Debtor's assets are insufficient to pay Administrative Claims in full) absent further advances on the DIP Secured Financing Claim(s).

7.2     <u>Disbursements</u>. On the Effective Date, the Debtor will transfer all assets (in cash or in-kind) to Holders of the DIP Secured Financing Claims on a pro rata basis, or upon such other terms that are agreed to between the Debtor and the Holders of DIP Secured Financing Claims. The Holders of DIP Secured Financing Claims shall be liable for Administrative Claims (including all pre-confirmation and post-confirmation quarterly disbursement fees to the United States Trustee pursuant to 28 U.S.C. § 1930 until the earliest of when the case is dismissed, converted, or closed after issuance of a final decree) in an amount up to, but not exceeding, the fair market value of assets transferred by the Debtor to the Holders of the DIP Secured Financing Claims. The Debtor will not declare any dividends.

7.3     <u>Unclaimed Distributions</u>. The Holder of an Allowed Claim, or any other Person entitled to be paid under this Plan, who has not claimed such Person's payment within ninety (90) days of the disbursement or attempted disbursement of such funds under this Plan shall be deemed to have forfeited such Person's right to receive such payment pursuant to this Plan. A Person shall be deemed to have failed to claim a payment if (a) a check to such Person is returned as undeliverable without a proper forwarding address, (b) such Person's check has not been cashed, or (c) a check to such a Person could not be mailed or delivered due to the absence of a proper address to which mail or deliver such check. Any such unclaimed payments shall become property of the Debtor.

7.4     <u>Execution and Delivery of Other Agreements, etc</u>. In order to effect the treatment of Claims and Interests pursuant to this Plan, the Debtor and any Holder of an affected Claim or Interest may execute and deliver, or join in the execution and delivery of, any agreement, instrument or document or perform any other act necessary or appropriate for the implementation or consummation of the Plan.

7.5     <u>Revesting of Property</u>. Except as otherwise provided in this Plan, the Debtor, as of the Effective Date, shall be vested with substantially all of the Property free and clear of all claims, liens, encumbrances, charges and other Interests of Holders of Claims against, or Interests in, the Debtor, except for Claims and security interests arising pursuant to the provisions of this Plan or the documents, instruments and agreements implementing this Plan.

7.6     <u>Post-Confirmation Reporting and Payments</u>. After Confirmation, the Debtor shall serve on the United States Trustee a monthly financial report for each month (or portion thereof) the

case remains open. In addition, the Debtor shall pay the quarterly fees owing to the United States Trustee until the Debtor's Bankruptcy Case is closed, converted to Chapter 7 or dismissed.

## ARTICLE VIII—CONDITIONS PRECEDENT

8.1   <u>Conditions to Confirmation</u>. Confirmation of this Plan is subject to satisfaction of the following condition precedent:

(a) The Confirmation Order shall have been signed by the Bankruptcy Court and duly entered on the docket for the Case by the Clerk of the Bankruptcy Court.

8.2   <u>Conditions to the Effective Date</u>. The occurrence of the Effective Date is subject to satisfaction of the following conditions precedent:

(a) The Confirmation Order shall have been entered as a Final Order;

(b) All other deliveries required to be made on or prior to the Effective Date and all other action required to be taken on or prior to the Effective Date to implement and consummate the provisions of this Plan shall have been made or taken as required under this Plan and in a manner satisfactory to the Debtor.

## ARTICLE IX—RETENTION OF JURISDICTION

Notwithstanding confirmation of this Plan or the Effective Date having occurred, the Bankruptcy Court shall retain jurisdiction to enforce the provisions, purposes and intent of this Plan, until the entry of a final decree closing this case, including, without limitation, jurisdiction with respect to the following matters:

9.1   To determine the classification, allowance or disallowance of all Claims or Interests, including, without limitation, Claims and objections relating to the rejection of executory contracts and unexpired leases pursuant to this Plan, and to hear and determine any and all objections to such Claims or Interests.

9.2   To hear and determine any and all disputes arising under this Plan;

9.3   To determine any and all applications for allowance of compensation and reimbursement of expenses for periods prior to the Effective Date;

9.4   To hear and determine any and all controversies, suits and disputes arising through the entry of a final decree;

9.5   To recover all assets and Property of the Debtor, wherever located;

9.6   To interpret, construe or enforce this Plan, the Confirmation Order or any order previously entered by the Bankruptcy Court in the Bankruptcy Case;

9.7   To consider and determine any proposed modification or amendment of the Plan;

9.8   To implement the provisions of this Plan and enter any orders in aid of its implementation or in furtherance of its purposes and intent;

9.9   To correct any defect, cure any omissions or reconcile any inconsistency in this Plan or the Confirmation Order as may be necessary to carry out the purpose and intent of this Plan;

9.10 To determine such other matters as may be provided for in the Confirmation Order or as may be authorized under the provisions of the Bankruptcy Code;

9.11 To enforce all orders, judgments, injunctions and rulings entered in connection with the Bankruptcy Case; and

9.12 To hear and determine any and all controversies, suits and disputes arising through the entry of a final decree.

## ARTICLE X—MISCELLANEOUS

10.1 <u>Transactions on Business Days</u>. Whenever any payment or distribution to be made under this plan shall be due on a day other than a Business Day, such payment or distribution shall be made, without interest, on the immediately following Business Day.

10.2 <u>Officers and Directors</u>. The initial officers and Board of Directors of the Debtor following the Effective Date shall consist of Joseph R. Audi.

10.3 <u>Construction</u>. The rules of construction set forth in section 102 of the Bankruptcy Code shall apply to Construction of this Plan.

10.4 <u>Modifications</u>. This Plan may not be altered, amended or modified except upon the written consent of the Debtor and in accordance with the provisions of section 1127 of the Bankruptcy Code.

10.5 <u>Revocation and Withdrawal</u>. The Debtor reserves the right to revoke or withdraw this Plan at any time before the Confirmation Date. If the Debtor revokes or withdraws this Plan prior to the Confirmation Date, or if the Confirmation or the Effective Date does not occur, then this Plan shall be deemed null and void.

10.6 <u>No Interest</u>. Except as expressly stated in this Plan, or allowed by a Final Order of the Bankruptcy Court, no interest, penalty or late charge is allowed on any Claim or Interest subsequent to the Petition Date.

10.7 <u>No Attorney's Fees</u>. No attorney's fees shall be paid with respect to any Claim or Interest except as specified herein or as allowed by a Final Order of the Bankruptcy Court.

10.8 <u>Management and Retention of Employees</u>. Except where otherwise expressly provided herein, after the Effective Date the corporate governance and management of the Debtor shall be determined by the Board of Directors in accordance with the laws of the Commonwealth of Virginia.

10.9 <u>Amounts of Claims and Interests</u>. All references to Claims and Interests and amounts of Claims and Interests refer to the amount of the Claim or Interest allowed by Final Order by the Bankruptcy Court or by this Plan; provided, however, that Claims and Interests which have not been Allowed prior to the day set for return of ballots may only be voted and shall only be counted at the amount as estimated by the Bankruptcy Court on or prior to the Confirmation Date. The Debtor and other interested parties reserve the right, both before and after the Confirmation Date, to object to Claims and Interests so as to have the Bankruptcy Court determine the Allowed amount of such Claim or Interest to be paid under this Plan.

10.10 Discharge. Except as otherwise provided in this Plan or the Confirmation Order, confirmation of this Plan shall, pursuant to section 1141 of the Bankruptcy Code, constitute a complete satisfaction, discharge and release, effective as of the Effective Date, of the Debtor and its Property, of and from any and all debts, liabilities or Claims arising on or before the Confirmation Date, both prior to and from and after the commencement of the Bankruptcy Case, whether or not (a) a proof of claim is filed or deemed filed under section 501 of the Bankruptcy Code, (b) such Claim is allowed under section 501 of the Bankruptcy Code, or (c) the Holder of such Claim has accepted the Plan. Except as otherwise provided herein, nothing in this Plan shall be deemed to waive, limit or restrict in any way the discharge granted pursuant to section 1141 of the Bankruptcy Code upon confirmation of this Plan.

10.11 Amendments to Articles of Incorporation and Bylaws. From and after the Effective Date, amendments to the articles of incorporation and bylaws of the Debtor shall be carried out in accordance with applicable state law, provided, however, that all such amendments shall be made in compliance with section 1123(a)(6) of the Bankruptcy Code.

10.12 Section 1146(c) Exemption. Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of a security, or of the execution, delivery or recording of an instrument of transfer under this Plan may not be taxed under any law imposing deed stamps, a stamp tax, a recording tax, a transfer tax, an intangible tax or similar tax. In order to effectuate section 1146(c) of the Bankruptcy Code, each recorder of deed or similar official for any county, city or governmental unit in which instruments of transfer of the Property are to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instruments for recording and promptly to record such instruments or deeds without payment of any documentary stamp tax, deed stamps, stamp tax, recording tax, transfer tax, intangible tax or similar tax. Without limiting the generality of the foregoing, any deed, mortgage or instrument modifying or amending a deed or mortgage executed and delivered pursuant to this Plan and relating to the Property shall constitute a "transfer under a plan" within the purview of section 1146(c) of the Bankruptcy Code, and, accordingly, shall not be subject to any documentary stamp tax, deed stamp tax, recording tax, transfer tax, intangible tax or similar tax.

10.13 Amendments. The authority of the Debtor and any other party in interest to agree to modifications, supplements or amendments of or to the agreements and instruments referred to herein shall be as provided in such agreements and instruments.

10.14 Headings. The headings used in this Plan are inserted for convenience only and neither constitute a portion of this Plan nor in any manner affect the provisions of the Plan.

10.15 Governing Law. Except to the extent that the Bankruptcy Code or other federal laws are applicable, the rights and obligations arising under this Plan shall be governed by, and construed under, the laws of the Commonwealth of Virginia.

10.16 Time. Bankruptcy Rule 9006 shall be used to compute any period of time prescribed or allowed by this Plan.

10.17 Severability. Should any provision of this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of this Plan. To the extent that any provision of the Plan would, by

its inclusion in the Plan, prevent or preclude the Bankruptcy Court from entering the Confirmation Order, the Bankruptcy Court, upon request of the Debtor, may modify or amend, or permit the Debtor to modify or amend such provision, in whole or in part, as necessary to cure any defect or remove any impediment to the confirmation of the Plan existing by reason of such provision.

10.18 <u>Successor and Assigns</u>. The rights, benefits and obligations of any Person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

10.19 <u>Preferences and Fraudulent Conveyances</u>. The Debtor shall retain the right to pursue any preferential transfers under section 547 of the Bankruptcy Code or any fraudulent conveyances under section 548 of the Bankruptcy Code.

10.20 <u>Plan Controls Disclosure Statement</u>. In the event and to the extent that any provision of the Disclosure Statement is inconsistent with or contrary to the provisions of this Plan and the annexed exhibits, the provisions of the Plan shall control and take precedence.


Dated: June 2, 2010                                    PROSPECT HOMES OF RICHMOND, INC.
                                                       By Counsel


/s/ John C. Smith
Roy M. Terry, Jr. VSB No. 17764
John C. Smith, VSB No. 44556
Elizabeth L. Gunn, VSB No. 71044
DurretteBradshaw PLC
1111 East Main Street, 16th Floor
Richmond, Virginia 23219
(804) 775-6900
Fax: (804) 775-6911
Counsel for Prospect Homes of Richmond, Inc.

F:\P\Prospect Homes of Richmond, Inc\Plan\Plan v1.3.doc